**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KRISTEN DEYERLER, JOHN COLEMAN, & WILLIAM PHEMISTER, individually and on behalf of all similarly situated individuals, | )<br>)<br>)<br>) |
| *Plaintiffs*, | )  No. 22-cv-01284<br>)<br>)  Hon. Jeremy C. Daniel |
| v. | )<br>)  Mag. Hon. Jeffrey Cole<br>) |
| HIREVUE, INC., a Delaware corporation, | )<br>) |
| *Defendant.* | )<br>)<br>) |

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, Kristen Deyerler, John Coleman, and William Phemister ("Plaintiffs"), individually and on behalf of all similarly situated individuals, bring this Second Amended Class Action Complaint against Defendant HireVue, Inc. ("Defendant" or "HireVue") for its violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"), and to obtain redress for persons injured by its conduct. Plaintiffs allege the following based on personal knowledge as to Plaintiffs' own experiences, and as to all other matters, upon information and belief, including an investigation conducted by Plaintiffs' attorneys.

**INTRODUCTION**

1. BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including facial scans, fingerprints and voiceprints. "Biometric information" is any information based on a biometric identifier, regardless of how it is converted or stored. 740 ILCS § 14/10. Collectively, biometric identifiers and biometric information are known as "biometrics."

1

2. This case concerns the misuse of individuals' biometrics by Defendant, the provider of an online video interview platform powered by algorithmic "assessment" software. To assess potential job candidates by using biometric technology, Defendant through its software, is capturing, collecting, disseminating, or otherwise using voice and facial biometrics of Plaintiffs and other Class members, without their informed written consent as required by law.

3. BIPA provides, *inter alia*, that private entities, such as Defendant, may not obtain and/or possess an individual's biometrics unless they first:

> (1) inform the person whose biometrics are to be collected *in writing* that biometric identifiers or biometric information will be collected or stored;
>
> (2) inform the person whose biometrics are to be collected *in writing* of the specific purpose and the length of term or which such biometric identifiers or biometric information is being collected, stored and used;
>
> (3) receive a *written release* from the person whose biometrics are to be collected, allowing the capture and collection of their biometric identifiers or biometric information; and
>
> (4) publish publicly available retention guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a).

4. Compliance with BIPA is straightforward and may be accomplished through a single, signed sheet of paper. BIPA's requirements bestow a right to privacy in biometrics and a right to make an *informed* decision when electing whether to provide or withhold biometrics.

5. Defendant's biometrically-enabled software works by extracting biometric information from job candidates, typically their voiceprints and facial geometry, to use such information for voice and facial expression assessments and candidate screening purposes.

Defendant's software also results in the dissemination of biometrics to third parties, such as data storage vendors.

6. The Illinois Legislature has found that "biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, even sensitive information like Social Security numbers can be changed. Biometrics, however, are biologically unique to each individual and, once compromised, such individual has no recourse, is at a heightened risk for identity theft, and is likely to withdraw from biometric facilitated transactions." 740 ILCS 14/5. The risk is compounded when a person's biometrics are also associated with their other personally identifiable information.

7. The deprivation of the statutory rights conferred by BIPA constitutes the actual injuries the Illinois Legislature sought to prevent.

8. Plaintiffs bring this action for statutory damages and other remedies as a result of Defendant's conduct in violating Plaintiffs' state privacy rights.

9. On Plaintiffs' own behalf, and on behalf of the proposed Class defined below, Plaintiffs seek an injunction requiring Defendant to comply with BIPA, as well as an award of statutory damages under BIPA to the Class members, together with costs and reasonable attorneys' fees.

**PARTIES**

10. Plaintiff Kristen Deyerler is a natural person and a resident of Illinois.

11. Plaintiff John Coleman is a natural person and a resident of Illinois.

12. Plaintiff William Phemister is a natural person and a resident of Illinois.

13. Defendant HireVue, Inc. is a Delaware corporation with its principal place of business in South Jordan, Utah.

## JURISDICTION AND VENUE

14. This Court may assert subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.*, because this case is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant; and none of the exceptions under subsection 1332(d) apply.

15. This Court may assert personal jurisdiction over Defendant, because Defendant is doing business within this State and transacts business within this State such that it has sufficient minimum contacts with Illinois and/or has purposely availed itself of Illinois markets to make it reasonable for this Court to exercise jurisdiction over Defendant, and because Plaintiffs' claims arise out of Defendant's unlawful in-state actions when Defendant obtained biometric data in Illinois from Illinois residents.

## FACTUAL BACKGROUND

16. HireVue is a hiring service company that uses an algorithm to assess job applicants' qualifications based on various voice and facial characteristics via an automated video interview platform.

17. HireVue's customers, many of which are headquartered in Illinois, are prospective employers looking to fill job openings often exclusively in Illinois.

18. Defendant's presence in Illinois is substantial. For years, HireVue's website has been trumpeting its detailed contacts with Chicago.[1] Defendant HireVue also regularly attends marketing events in Chicago, Illinois including the SIOP Conference held on April 17, 2024

---

[1] https://www.hirevue.com/blog/hiring/changing-the-economic-map-in-chicago-with-assessments-training-and-hope (last accessed on August 1, 2024).

4

through April 20, 2024; Defendant's marketing materials were published on its website reminding businesses in Illinois that they will be present at Booth #220 at the Hyatt Regency.[2]

19. Defendant's presence in Illinois is not merely incidental. Defendant's top customers include Health Care Service Corporation, State Farm, and even Kraft Heinz[3], companies which are all headquartered in Illinois.

20. Furthermore, some of HireVue's employees also reside in Illinois, and also did at the time Plaintiffs were subjected to Defendant's illegal in-state conduct.

21. HireVue states that there are "thousands of data points" in each job candidate's recorded video interview, which HireVue collects and uses to assess the candidate's cognitive ability, personality traits, emotional intelligence, and social aptitude.[4]

22. Specifically, according to Defendant, the video interview ("HireVue Assessments") analyzes the same data that is examined during a traditional interview:

   1) WHAT A CANDIDATE SAYS: the content of the speech;

   2) HOW THEY SAY IT: intonation, inflection, and other audio cues;

   3) WHAT THEY DO WHILE SAYING IT: the emotions a candidate portrays, particularly in relation to what is being said at the time.[5]

23. Accordingly, in order to identify and assess candidates during the automated video interview as described above, necessarily collects, captures and uses voiceprint biometrics and facial geometry.

---

[2] https://hirevue.registration.goldcast.io/events/48497b69-fab5-44ae-b174-72aefa25c874 (last accessed on August 1, 2024).
[3] https://www.hirevue.com/resources/video/kraft-heinz-makes-the-days-of-recruiters-less-tedious (last accessed on August 1, 2024).
[4] https://www.hirevue.com/resources/whitepaper/the-next-generation-of-assessments (HireVue's February 2019 White Paper, "The Next Generation of Assessments").
[5] *Id.*

5

24. For example, when a job candidate verbally interacts with Defendant's video interview software, Defendant's algorithms perform a series of spectral analyses of the job candidate's voice based on extraction of unique physical features for Defendant's assessment of each individual job candidate.

25. Defendant's algorithms also include the extraction of the job candidates' unique facial features for Defendant's assessment of each individual job candidate interviewed.

26. Voiceprint biometrics and facial geometry and the biometric information derived therefrom is regulated by BIPA.

27. In violation of BIPA, HireVue failed to inform the job candidates, including Plaintiffs, that their biometrics were being collected, captured, received through trade, or otherwise obtained when they interviewed through Defendant's automated job interview platform and failed to obtain any written consent from them to do so, as required by 740 ILCS 14/15(b).

28. Similarly, in violation of 740 ILCS 14/15(a), HireVue did not make publicly available any biometric retention policy that disclosed how long it stored the biometrics it collected.

29. To this day, Plaintiffs are unaware of the status of their biometrics obtained by Defendant.

30. By failing to comply with BIPA, Defendant has violated Plaintiffs' substantive state rights to biometric information privacy.

**FACTS SPECIFIC TO PLAINTIFF DEYERLER**

31. Like thousands of other Illinois residents, Plaintiff Kristen Deyerler had her biometrics collected by Defendant when she interviewed for a position through HireVue's online platform.

32. Specifically, in or around April 2020, Plaintiff Deyerler applied for an Illinois-based job with Compass Group. Plaintiff Deyerler then received a link to the HireVue interview platform from Defendant's email address "interviews@hirevue.com" in Illinois, and was subjected to Defendant's biometric-enabled platform through an online camera in Illinois.

33. Using its online platform, Defendant captured Plaintiff Deyerler's voiceprint biometrics in order to assist in generation of an "assessment score".

34. Plaintiff Deyerler, like thousands of Illinois residents who interacted with Defendant's platform, never provided written consent for Defendant to capture, collect, store, or disseminate her voiceprint biometrics.

35. By failing to comply with BIPA, Defendant has violated Plaintiff Deyerler's substantive state rights to biometric information privacy.

## FACTS SPECIFIC TO PLAINTIFF COLEMAN

36. Like thousands of other Illinois residents, Plaintiff John Coleman had his biometrics collected by Defendant when he interviewed for a position through HireVue's online platform.

37. Specifically, in or around January 2020, Plaintiff Coleman applied for an Illinois-based job with Health Care Service Corporation ("HCSC"), a corporation organized under the laws of the state of Delaware with its principal place of business in Chicago. Crucially, HCSC's operating divisions is Blue Cross and Blue Shield of Illinois with whom Plaintiff Coleman communicated with. Plaintiff Coleman then received a link to the HireVue interview from Defendant's email address "interviews@hirevue.com" in Illinois and was subjected to Defendant's biometric-enabled platform through an online camera in Illinois.

38. Using its online platform, Defendant captured Plaintiff Coleman's facial geometry in order to assist in generation of an "assessment score".

39. Plaintiff Coleman, like thousands of Illinois residents who interacted with Defendant's platform, never provided written consent for Defendant to capture, store, or disseminate his facial geometry.

40. By failing to comply with BIPA, Defendant has violated Plaintiff Coleman's substantive state rights to biometric information privacy.

## FACTS SPECIFIC TO PLAINTIFF PHEMISTER

41. Like thousands of other Illinois residents, Plaintiff William Phemister had his biometrics collected by Defendant when he interviewed for a position through HireVue's online platform.

42. Specifically, in or around August 2019, Plaintiff Phemister applied for an Illinois-based job with Panda Express. Plaintiff Phemister then received a link to the HireVue interview platform from Defendant's email address "interviews@hirevue.com" and was subjected to Defendant's biometric-enabled platform through an online camera in Illinois.

43. Using its online platform, Defendant captured Plaintiff Phemister's voiceprint biometrics in order to assist in generation of an "assessment score" in connection with the Panda Express interview in Illinois.

44. Plaintiff Phemister, like thousands of Illinois residents who interacted with Defendant's platform, never provided written consent for Defendant to capture, store, or disseminate his voiceprint biometrics.

45. By failing to comply with BIPA, Defendant has violated Plaintiff Phemister's substantive state rights to biometric information privacy.

## CLASS ALLEGATIONS

46. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs bring this action on their own behalf and on behalf of a class (the "Class") with two subclasses (the "Subclasses") defined as follows:

> **The Class:** All individuals whose biometric identifiers or biometric information were captured, collected, received through trade, or otherwise obtained through Defendant's video interview software within the state of Illinois any time within the applicable limitations period.
>
> **The Facial Geometry Subclass:** All individuals whose facial biometric identifiers or biometric information were captured, collected, received through trade, or otherwise obtained through Defendant's video interview software within the state of Illinois any time within the applicable limitations period.
>
> **The Voiceprint Subclass:** All individuals whose voice biometric identifiers or biometric information were captured, collected, received through trade, or otherwise obtained through Defendant's video interview software within the state of Illinois any time within the applicable limitations period.

47. Excluded from the Class and Subclasses are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family of such officer or director.

48. There are thousands of members of the Class and Subclasses, making the members of the Class and Subclasses so numerous that joinder of all members would be impracticable. Although the exact number of members of the Class and Subclasses is currently unknown to Plaintiffs, the members can be easily identified through Defendant's records.

49. Plaintiffs' claims are typical of the claims of the Class and Subclasses they seek to represent, because the basis of Defendant's liability to Plaintiffs and the Class and Subclasses is substantially the same, and because Defendant's conduct has resulted in similar injuries to Plaintiffs and to the Class and Subclasses.

50. There are many questions of law and fact common to the claims of Plaintiffs and the Class and Subclasses and those questions predominate over any questions that may affect individual members of the Class and Subclasses. Common questions for the Class and Subclasses include, but are not limited to, the following:

    a. Whether Defendant's conduct is subject to BIPA;

    b. Whether Defendant made available to the public a written policy that establishes a retention schedule and guidelines for destroying biometrics;

    c. Whether Defendant obtained a written release from the members of the Class and Subclasses before capturing, collecting, receiving through trade, or obtaining their biometrics;

    d. Whether Defendant provided a written disclosure to the members of the Class and Subclasses that explained the specific purposes, and the length of time, for which biometrics were being collected, stored, received through trade, or otherwise obtained before taking such biometrics;

    e. Whether Defendant disseminated or disclosed the Class and Subclasses members' biometrics to third parties;

    f. Whether Defendant's conduct violates BIPA;

    g. Whether Defendant's BIPA violations are willful or reckless; and

    h. Whether Plaintiffs and the other members of the Class and Subclasses are entitled to damages and injunctive relief under BIPA.

51. Absent a class action, most members of the Class and Subclasses would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual

actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

52. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class and Subclasses they seek to represent. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclasses have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class and Subclasses.

53. Defendant has acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the Class and Subclasses and requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclasses and making injunctive or corresponding declaratory relief appropriate for the Class and Subclasses as a whole.

### COUNTS I-VI
**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*.**
**(On behalf of Plaintiff Coleman and the Class and the Facial Geometry Subclass)**

54. Plaintiff Coleman incorporates the foregoing allegations as if fully set forth herein.

55. Defendant HireVue is a private entity under BIPA.

56. BIPA requires that private entities, such as Defendant, obtain informed written consent from individuals before acquiring their biometrics. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entities] first: (1) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of for which a biometric

identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . .." 740 ILCS 14/15(b).

57. BIPA also requires that a private entity in possession of biometric identifiers and/or biometric information establish and maintain a written, publicly available retention policy and guidelines for permanent deletion of such biometrics. 740 ILCS 14/15(a).

58. Plaintiff Coleman and the other Class and the Facial Geometry Subclass members have had their "biometric identifiers," namely their facial geometry, collected, captured, retained through trade, or otherwise obtained by Defendant in Illinois through Defendant's biometric-based interview software platform. 740 ILCS 14/10.

59. Each instance when Plaintiff Coleman and the other Class and Facial Geometry Subclass members interacted with HireVue's biometric-based interview software, Defendant captured, collected, received through trade, stored, and used Plaintiff's and the other Class and Facial Geometry Subclass members' facial geometry without valid written consent in violation of BIPA.

60. Defendant's practices with respect to capturing, collecting, receiving through trade, storing, and using its users' facial scan biometrics failed to comply with the following applicable BIPA requirements:

    I. Defendant failed to inform Plaintiff Coleman and the other members of the Class and the Facial Geometry Subclass in writing that their facial geometry (and associated biometric information) was being captured, collected, received through trade, stored, and/or used prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

12

II. Defendant failed to inform Plaintiff Coleman and the other Class and Facial Geometry Subclass members in writing of the specific purpose for which their facial geometry (and associated biometric information) was being captured, collected, received through trade, stored, and/or used, as required by 740 ILCS 14/15(b)(2);

III. Defendant failed to inform Plaintiff Coleman and the other Class and the Facial Geometry Subclass members in writing the specific length of term their facial geometry (and associated biometric information) was being captured, collected, received through trade, stored, and/or used, as required by 740 ILCS 14/15(b)(2);

IV. Defendant failed to obtain a written release, as required by 740 ILCS 14/15(b)(3);

V. Defendant failed to provide a publicly-available retention schedule detailing the length of time for which the biometrics are stored and/or guidelines for permanently destroying the biometrics they store, as required by 740 ILCS 14/15(a); and,

VI. Defendant failed to obtain informed consent to disclose or disseminate the Class and Facial Geometry Subclass members' facial scan biometrics (and associated biometric information) for purposes of data retention and storage of the same, as required by 740 ILCS 14/15(d)(1).

61. Defendant knew, or was reckless in not knowing, that the biometric technology that it utilized, and which thousands of individuals within Illinois interacted with, would be subject to the provisions of BIPA, yet failed to comply with the statute.

62. By capturing, collecting, storing, using, and disseminating Plaintiff Coleman's and the other Class and Facial Geometry Subclass members' facial scan biometrics as described herein,

13

Defendant denied Plaintiff Coleman and the other Class and Facial Geometry Subclass members their rights to statutorily-required information and violated their respective rights to biometric information privacy, as set forth in BIPA.

63.     BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)–(2).

64.     Defendant's violations of BIPA were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with BIPA.

65.     Accordingly, with respect to Counts I-VI, Plaintiff Coleman, individually and on behalf of the proposed Class and the Facial Geometry Subclass, prays for the relief set forth below.

## COUNTS VII-XII
**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*.**
**(On behalf of Plaintiffs and the Class and the Voiceprint Subclass)**

66.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

67.     Defendant HireVue is a private entity under BIPA.

68.     BIPA requires that private entities, such as Defendant, obtain informed written consent from individuals before acquiring their biometrics. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entities] first: (1) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives

14

a written release executed by the subject of the biometric identifier or biometric information . . ..." 740 ILCS 14/15(b).

69. BIPA also requires that a private entity in possession of biometric identifiers and/or biometric information establish and maintain a written, publicly available retention policy and guidelines for permanent deletion of such biometrics. 740 ILCS 14/15(a).

70. Plaintiffs and the other Class and Voiceprint Subclass members have had their "biometric identifiers," namely their voiceprint biometrics, collected, captured, retained through trade, or otherwise obtained by Defendant in Illinois through Defendant's biometric-based interview software platform. 740 ILCS 14/10.

71. Each instance when Plaintiffs and the other Class members interacted with HireVue's biometric-based interview software, Defendant captured, collected, received through trade, stored, and used Plaintiffs' and the other Class and Voiceprint Subclass members' voiceprint biometrics without valid written consent in violation of BIPA.

72. Defendant's practices with respect to capturing, collecting, receiving through trade, storing, and using its users' voiceprint biometrics failed to comply with the following applicable BIPA requirements:

    VII. Defendant failed to inform Plaintiffs and the other members of the Class and the Voiceprint Subclass in writing that their voiceprint biometrics (and associated biometric information) was being captured, collected, received through trade, stored, and/or used prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

    VIII. Defendant failed to inform Plaintiffs and the other Class and Voiceprint Subclass members in writing of the specific purpose for which their voiceprint biometrics

15

(and associated biometric information) was being captured, collected, received through trade, stored, and/or used, as required by 740 ILCS 14/15(b)(2);

IX. Defendant failed to inform Plaintiffs and the other Class and Voiceprint Subclass members in writing the specific length of term their voiceprint biometrics (and associated biometric information) was being captured, collected, received through trade, stored, and/or used, as required by 740 ILCS 14/15(b)(2);

X. Defendant failed to obtain a written release, as required by 740 ILCS 14/15(b)(3);

XI. Defendant failed to provide a publicly-available retention schedule detailing the length of time for which the biometrics are stored and/or guidelines for permanently destroying the biometrics they store, as required by 740 ILCS 14/15(a); and,

XII. Defendant failed to obtain informed consent to disclose or disseminate the Class and the Voiceprint Subclass members' voiceprint biometrics (and associated biometric information) for purposes of data retention and storage of the same, as required by 740 ILCS 14/15(d)(1).

73. Defendant knew, or was reckless in not knowing, that the biometric technology that it utilized, and which thousands of individuals within Illinois interacted with, would be subject to the provisions of BIPA, yet failed to comply with the statute.

74. By capturing, collecting, storing, using, and disseminating Plaintiffs' and the other Class and Voiceprint Subclass members' voiceprint biometrics as described herein, Defendant denied Plaintiffs and the other Class and Voiceprint Subclass members their rights to statutorily-required information and violated their respective rights to biometric information privacy, as set forth in BIPA.

75. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)–(2).

76. Defendant's violations of BIPA were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with BIPA.

77. Accordingly, with respect to Counts VII-XII, Plaintiffs, individually and on behalf of the proposed Class and the Voiceprint Subclass, pray for the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class and Subclasses, respectfully request that this Court enter an Order:

a. Certifying the Class and Subclasses as defined above, appointing Plaintiffs as class representatives and the undersigned as class counsel;

b. Declaring that Defendant's actions, as set forth herein, violate BIPA;

c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the Class and Subclasses by requiring Defendant to comply with BIPA;

d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(2);

e. Awarding statutory damages of $1,000 for each negligent violation of the BIPA, pursuant to 740 ILCS 14/20(1);

f. Awarding reasonable attorneys' fees, costs, and other litigation expenses, pursuant to 740 ILCS 14/20(3);

g. Awarding pre- and post-judgment interest, as allowable by law; and

h. Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: November 27, 2024

Respectfully submitted,

KRISTEN DEYERLER, JOHN COLEMAN, & WILLIAM PHEMISTER, individually and on behalf of all similarly situated individuals,

By: /s/ Andrew T. Heldut
*One of Plaintiffs' Attorneys*

David L. Gerbie
Andrew T. Heldut
Brendan Duffner
Colin P. Buscarini
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
dgerbie@mcgpc.com
aheldut@mcgpc.com
bduffner@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiffs and the Putative Class and Subclasses*